**VICTOR N. PIPPINS**
California Bar No. 251953
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Victor_Pippins@fd.org

Attorneys for Mr. Martinez-Peralta

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 08CR0247-H |
| Plaintiff, ) | |
| v. ) | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS |
| **JUAN ANTONIO MARTINEZ-PERALTA**, ) | |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**

According to the information provided by the government, at an undisclosed time on January 14, 2008, Border Patrol Agent Dale E. Landers was performing line watch duties in the vicinity of Campo, California. This area is approximately 10 miles north of the Unites States/Mexico International Border, and about 8 miles east of the Tecate, California, Port of Entry. Agent Landers came across footprints leading into the brush. These footprints led him to 11 suspected illegal aliens hiding in the brush. Agent Landers then identified himself as a Border Patrol Agent and, without providing a *Miranda* advisement, allegedly elicited statements from each of the 11 individuals that they had entered the United States without any legal permission. All 11 were arrested and transported to the Campo Border Patrol Station at approximately 9:30 p.m.

//

1    On January 15, 2008, at approximately 4:10 a.m., Border Patrol Agent Edgar Gallegos informed
2 Mr. Martinez-Peralta that his administrative rights had been withdrawn and he was finally advised of his
3 *Miranda* rights. Mr. Martinez-Peralta stated that he understood his rights and then exercised his right to
4 remain silent by refusing to answer questions without a lawyer present.

5    On January 30, 2008, Mr. Martinez-Peralta was indicted for being a deported alien found in the
6 United States, in violation of 8 U.S.C. § 1326. The indictment alleged that Mr. Martinez-Peralta was
7 removed from the U.S. subsequent to March 9, 2004.

**I.**

**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

10    Mr. Martinez-Peralta moves for the production of the following discovery. This request is not
11 limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in
12 the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See
13 United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

14    To date, *defense counsel has received 83 pages of discovery*. Mr. Martinez-Peralta respectfully
15 requests that the Government be ordered to produce discovery because Mr. Martinez-Peralta has reason to
16 believe that he has not received all the discoverable material in his case. Ms. Martinez-Peralta **specifically**
17 **requests production of a copy of the taped proceedings and any and all documents memorializing the**
18 **deportation proceeding allegedly held and any other proceedings that the Government intends to rely**
19 **upon at trial**. This request includes discovery of materials known to the Government attorney, as well as
20 discovery of materials which the Government attorney may become aware of through the exercise of due
21 diligence. See FED. R. CRIM. P. 16.

22    Mr. Martinez-Peralta has also not received a full copy of his A-file. Mr. Martinez-Peralta specifically
23 requests the documents memorializing the alleged deportation proceedings and any other proceedings that
24 the Government intends to rely upon at trial.

25    Mr. Martinez-Peralta additionally requests that the Court order the Government to allow him the
26 opportunity to review his A-file in its entirety. First, the A-file contains documentation concerning his
27 alleged deportation. Part of Mr. Martinez-Peralta defense may be that his underlying deportation was
28 invalid. The documents in the A-file would help illuminate the validity or futility of such a defense. For

1  example, A-file documents typically contain biographical information. Such information is essential to
2  determining whether Mr. Martinez-Peralta deportation was invalid.

3  Second, the Government will likely try to show at trial that a Government officer searched the A-file
4  and did not find an application by Mr. Martinez-Peralta for permission to enter the United States.
5  Mr. Martinez-Peralta anticipates that the Government will attempt to admit a "Certificate of Non-Existence
6  of Record" against him, arguing that if Mr. Martinez-Peralta had ever applied for permission to enter the
7  United States, such an application would be found in the A-file and because such an application is not in the
8  A-file, Mr. Martinez-Peralta must not have applied for permission to enter the United States.

9  Although the certificate might be admissible, the question of the thoroughness of the search
10 conducted by the Government of the A-file is, and should be, open to cross-examination. United States v.
11 Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation."). Mr. Martinez-
12 Peralta should be able to review his A-file in order to see whether any application for lawful admission
13 exists. Moreover, Mr. Martinez-Peralta should also be able to verify whether other documents that would
14 ordinarily be in the A-file are "non-existent," or otherwise missing from her A-file. Mr. Martinez-Peralta
15 may assert a defense that his application for lawful entry was lost or otherwise misplaced by the
16 Government. He must be allowed the opportunity to review his A-file and the manner in which it is being
17 maintained by the Government in order to present this defense.

**II.**

**THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE A SPECIFIC, POST-CONVICTION DATE OF REMOVAL**

21 The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise
22 infamous crime, unless on a presentment or indictment of a Grand Jury . . ." Consistent with this
23 Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and
24 expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense
25 intended to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881). It is black letter law that an
26 indictment that does not allege an element of an offense, even an implied element, is defective, and should
27 be dismissed. See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361
28 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v.

1  Keith, 605 F.2d 462, 464 (9th Cir. 1979).

2  The 9th Circuit has recently held that an indictment alleging a violation of 8 U.S.C. §1326 must allege both "the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction." United States v. Salazar-Lopez, 506 F.3d 748, 749-750 (9th Cir. 2007). In Salazar-Lopez, the indictment charged the defendant with a violation of § 1326 but "did not allege that Salazar-Lopez had been previously removed subsequent to a felony conviction, nor did it allege a specific date for Salazar-Lopez's prior removal." Id. at 750. The 9th Circuit unequivocally held that the indictment "required" an allegation that the defendant "had been removed on a specific, post-conviction date." Id. at 751.

Here, the indictment fails to allege that Mr. Martinez-Peralta "had been removed on a specific, post conviction date." Instead, the indictment only says that Mr. Martinez-Peralta "was removed from the United States subsequent to March 9, 2004." The indictment completely fails to mention Mr. Martinez-Peralta's prior conviction and a specific date of deportation after that conviction. This is insufficient under Salazar-Lopez and therefore the indictment must be dismissed.[1]

### III.

**THE STATEMENTS MUST BE SUPPRESSED UNDER MIRANDA AND A HEARING AS TO THE VOLUNTARINESS OF THE STATEMENTS MUST BE HELD**

**A.   The Government Must Demonstrate That Mr. Martinez-Peralta's Field Statements To Agent Cortez Were Given After He Knowingly And Voluntarily Waived His Miranda Warnings**

**1.   Miranda Warnings Must Precede Custodial Interrogation**

It is well known that before a defendant in custody can be questioned about alleged criminal activity, he must be given warnings under Miranda v. Arizona, 384 U.S. 436 (1966). Miranda explained that "when the person being interrogated is 'in custody at the station or otherwise deprived of his freedom of action in any significant way,'" warnings are required. Orozco v. Texas, 394 U.S. 324, 327(1969) (quoting Miranda, 384 U.S. at 477). A suspect is in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe that he could not freely leave. See United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v. Bekowies, 432 F.2d 8, 12 (9th

1  Cir. 1970). Although questions regarding routine biographical information usually do not trigger the
2  safeguard of <u>Miranda</u>, the exception does not apply "where the elicitation of information regarding
3  immigration status is reasonably likely to inculpate the [suspect]." <u>United States v. Gonzalez-Sandoval</u>, 894
4  F.2d 1043, 1046 (9th Cir. 1990). In fact, because of the close relationship between civil and criminal
5  immigration investigations, "[c]ivil as well as criminal interrogation of in-custody defendants by INS
6  investigators should generally be accompanied by the <u>Miranda</u> warnings." <u>United States v. Mata-Abundiz</u>,
7  717 F.2d 1277, 1279 (9th Cir. 1983).

8        In determining whether an individual is in custody for purposes of <u>Miranda</u>, the 9th Circuit has
9  instructed courts to consider "(1) the language used to summon the individual; (2) the extent to which the
10 defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the
11 duration of the detention; and (5) the degree of pressure applied to detain the individual." <u>United States v.</u>
12 <u>Kim</u>, 292 F.3d 971, 973 (9th Cir. 2002) (citations omitted). The same considerations apply in the context
13 of custody at the border. <u>See</u> <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980).
14 Furthermore, questions by agents implying a person is suspected of criminal activity can give rise to a
15 reasonable belief that one is not free to leave and thus turn an encounter with law enforcement into custody
16 for purposes of <u>Miranda</u>. <u>United States v. Chavez-Valenzuela</u>, 268 F.3d 719, 725 (9th Cir. 2001). A person
17 does not need to be physically restrained to be in "custody." The 9th Circuit has found that an individual
18 questioned out in an open field, neither handcuffed or told he was under arrest, to be in custody for purposes
19 of <u>Miranda</u>. <u>United States v. Beraun-Panez</u>, 812 F.2d 578, 579 (1987). In that case, the court held that
20 "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding."
21 <u>Id.</u> at 580.

22       Mr. Martinez-Peralta was clearly in custody. Although the Border Patrol report does not contain the
23 specific language used by the officers to "summon" Mr. Martinez-Peralta, the report explains that Agent
24 Landers identified himself as a Border Patrol Agent. Considered with the fact that Agent Cortez was in
25 uniform, carrying a gun and in an isolated area near the Mexican border it is clear that Mr. Martinez-Peralta
26 knew he was in the custody of law enforcement. Further, Mr. Martinez-Peralta was confronted with evidence
27 of his guilt immediately as Agent Landers began questioning him about his citizenship and nationality, the
28 precise elements of the crime he was suspected of committing, illegal reentry in violation of 8 U.S.C.

1  § 1326. The physical surrounding of the interrogation - in the brush close to the Mexican border - considered
2  with the questioning by a clearly identified Border Patrol agent demonstrates that Mr. Martinez-Peralta was
3  suspected of criminal activity and thus in custody. See Chavez-Valenzuela, 268 F.3d at 725. Because Mr.
4  Martinez-Peralta was in custody when he was questioned, any questioning must have been preceded by
5  Miranda warnings.

6  **2.  The Government Must Prove That Any Waiver Of Miranda Rights Was Voluntary, Knowing and Intelligent**

8  Based on the discovery provided to the defense, Mr. Martinez-Peralta's field interrogation was not
9  preceded by any Miranda warnings and yet a statement was taken. As the Supreme Court has made clear,
10 when "interrogation continues without the presence of an attorney, and a statement is taken, a *heavy* burden
11 rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege
12 against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475
13 (emphasis added) (citation omitted). It is undisputed that any waiver of the right to remain silent and the
14 right to counsel must be made knowingly, intelligently, and voluntarily in order to be effective. Schneckloth
15 v. Bustamonte, 412 U.S. 218 (1973). The standard of proof for a waiver of this constitutional right is in the
16 Supreme Court's own words "high." Miranda, 384 U.S. at 475; see also United States v. Heldt, 745 F.2d
17 1275, 1277 (9th Cir. 1984) (the burden on the government is "great" and the court "must indulge every
18 reasonable presumption against waiver of fundamental constitutional rights").

19 The validity of the waiver depends upon the particular facts and circumstances surrounding the case,
20 including the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477
21 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also Heldt, 745 F.2d at 1277. The 9th Circuit has
22 explained that a Miranda waiver must be both (1) voluntary, and (2) knowing and intelligent." Derrick v.
23 Peterson, 924 F.2d 813, 820 (9th Cir. 1990), cert. denied, 502 U.S. 853 (1991). The voluntariness prong of
24 this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." Id. However,
25 the second prong, requiring that the waiver be "knowing and intelligent," requires an inquiry into whether
26 "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the
27 consequences of the decision to abandon it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573
28 (1987)). This Court must therefore determine whether "the requisite level of comprehension" existed before

any purported waiver may be upheld. Derrick, 924 F.3d at 820. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal *both* an uncoerced choice *and* the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting Spring, 479 U.S. at 573) (emphasis in original) (citations omitted).

Therefore, unless the government demonstrates that the agents gave Mr. Martinez-Peralta Miranda warnings before he made a statement and that he voluntarily, knowingly and intelligently waived those rights before giving a statement, no evidence obtained as a result of the interrogation can be used against him. Miranda, 384 U.S. at 479. Since Mr. Martinez-Peralta was placed into Border Patrol custody and was immediately questioned directly about his citizenship and immigration status without any Miranda warnings, any and all statements must be suppressed. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980).

**B.    The Government Must Prove That Mr. Martinez-Peralta's Statements Were Voluntary**

    **1.    A Statement Must Be Voluntary To Comply With The Due Process Clause**

Even if a statement is preceded by Miranda warnings, the due process clause prohibits the use of involuntary statements. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964). The government bears the burden of proving by a preponderance of the evidence that any confession or statements were voluntarily made by a criminal defendant. Lego v. Twomey, 404 U.S. 477, 483 (1972). A statement is voluntary if it is the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960).

As the Supreme Court has explained, in determining whether a statement is voluntary, courts must look at the totality of the circumstances, taking into account factors such as "the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (citations omitted). A statement or confession will be involuntary if coerced by either physical intimidation or psychological pressure. A confession is deemed involuntary not only if coerced by physical intimidation, but also if achieved through psychological pressure. "The test is whether the confession was 'extracted by any sort of threats or violence, (or) obtained by any direct or implied promises, however slight, (or) by the

exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (per curiam) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). Accord United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

### 2. This Court Must Hold A Hearing Under 18 U.S.C. § 3501 To Determine Whether Mr. Martinez-Peralta Statements Were Voluntary

Under 18, U.S.C. § 3501(a), "[b]efore [a] confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." This Court is thus required to determine whether any statements made by Mr. Martinez-Peralta were voluntary. Additionally, 18 U.S.C. § 3501(b) requires this Court to consider numerous enumerated factors in determining whether Mr. Martinez-Peralta voluntarily made a statement. These factors include whether he understood the nature of the charges against him and whether he understood his constitutional rights.

Section 3501(a) clearly requires this Court to make a factual determination. When a factual determination is required, Federal Rule of Criminal Procedure 12 requires the court to make factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "'suppression hearings are often as important as the trial itself,'" these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings. Id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)). Without the presentation of evidence, this Court cannot adequately consider the 18 U.S.C. § 3501(b) factors. Therefore, Mr. Martinez-Peralta requests this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a) to determine, outside the presence of the jury, whether the statements he made were voluntary.

### IV.

### MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

*Mr. Martinez-Peralta has received 83 pages of discovery.* He has not however received any audiotapes of his deportation proceeding as well as a photocopy of the A-file. As information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, Mr. Martinez-Peralta may find it necessary to file further motions. It is, therefore, requested that Mr. Martinez-Peralta be allowed the opportunity to file further motions based upon information gained through the discovery process. Specifically, because Mr. Martinez-Peralta's collateral attack on the underlying

deportations relies on the audiotapes of the deportation proceedings, he requests the opportunity to file further briefing to support his collateral attack once he has been provided an opportunity to listen to the proceedings.

## VIII.
## CONCLUSION

For the foregoing reasons, Mr. Martinez-Peralta respectfully requests that the Court grant the above motions.

Respectfully submitted,

*s/ Victor N. Pippins*
Dated: March 3, 2008            **VICTOR N. PIPPINS**
                                 Federal Defenders of San Diego, Inc.
                                 Attorneys for Mr. Martinez-Peralta