KAREN P. HEWITT
United States Attorney
DAVID L. KATZ
Assistant U.S. Attorney
California State Bar No. 141296
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-5226
Facsimile No.: (619) 557-6741
email: David.Katz@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0247-H |
|---|---|---|
| Plaintiff, | ) ) | District Judge: Honorable Marilyn L. Huff |
| | ) | Courtroom: 13 (Fifth Floor) |
| v. | ) | Date: March 17, 2008 |
| | ) | Time: 2:00 p.m. |
| JUAN MARTINEZ-PERALTA, | ) | |
| | ) | **GOVERNMENT'S RESPONSE AND** |
| Defendant | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTIONS TO:** |
| | ) | |
| | ) | **(1) COMPEL DISCOVERY;** |
| | ) | **(2) DISMISS INDICTMENT;** |
| | ) | **(3) SUPPRESSION OF STATEMENTS;** |
| | ) | **(4) GRANT LEAVE TO FILE** |
| | ) | **FURTHER MOTIONS;** |
| | ) | |
| | ) | **TOGETHER WITH STATEMENT OF** |
| | ) | **FACTS, MEMORANDUM OF** |
| | ) | **POINTS AND AUTHORITIES, AND** |
| | ) | **GOVERNMENT'S MOTION FOR** |
| | ) | **RECIPROCAL DISCOVERY** |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and DAVID L. KATZ, Assistant U.S. Attorney, hereby files its Response and Opposition to Defendant Juan Martinez-Peralta's ("Defendant" or "Martinez") above-referenced motions and hereby files its Motion For Reciprocal Discovery. This Response and Opposition is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

A Complaint was filed on January 16, 2008, charging him with being a Deported Alien Found in the United States, in violation of Title 8, USC, Section 1326.  On that same date, at his initial appearance before a federal magistrate, Federal Defenders of San Diego, Inc., was appointed to represent Garcia, and Victor Pippins, Esq. was subsequently assigned the case. On November 13, 2007, the preliminary hearing was set for January 31, 2008.

On January 30, 2008, a federal grand jury returned a one-count indictment against Defendant, charging him with being a Deported Alien Found in the United States, in violation of Title 8, USC, Section 1326(a) and (b).  Defendant was to be arraigned on the Indictment on January 31, 2008, but the Indictment did not yet appear in Pacer as having been filed.  Defendant waived time until February 12, 2008, and on that date, he was arraigned on the Indictment.  The case was set for a motion hearing on March 17, 2008.  On March 3, 2008, Defendant filed the instant motions.  To date, the Government has provided 83 pages of discovery and a DVD recording of his advisal of rights and subsequent invocation of rights.  The tape recording of Defendant's deportation hearing has been ordered and should be available shortly.

**II**

**STATEMENT OF FACTS**

**A.   Offense Conduct**

   1.   Defendant Found in the U.S.

On January 14, 2008, shortly before 9:30 p.m., U.S. Border Patrol Agent ("BPA") Dale Landers was performing line watch duty in the Campo, California, in an area approximately eight (8) miles east of the Tecate, California, Port of Entry and approximately ten (10) miles north of the U.S.-Mexico international border, an area commonly used by illegal aliens who have crossed the border illegally to further their entry into the United States interior.  Agent Landers, utilizing sign cutting techniques,[1]

---

[1] A "sign cutting technique" is similar to what is might also referred to as "tracking."  It is a method of carefully observing the ground, brush or other parts of the environment, in order to find any
(continued...)

1  immediately found footprints leading into the brush. Following the footprints, Agent Landers found
2  eleven (11) individuals attempting to hide themselves in the surrounding brush - one of whom was
3  Defendant Martinez. Agent Landers immediately identified himself as a U.S. Border Patrol agent and
4  questioned all eleven people as to their citizenship and immigration status. All subjects, including
5  Martinez, identified themselves as Mexican citizens and nationals who had entered the United States
6  illegally and without any immigration or travel documents allowing them to enter or remain in the U.S.
7  legally. All eleven individuals were taken into custody and transported to the Campo Border Patrol
8  station for further processing.

9  When routine records checks were run at the station, it was revealed Defendant's immigration
10 history as well as his past criminal record in the United States. Martinez's fingerprints were run through
11 the IDENT/AFIS computer database and that information was verified.

12    2.    Defendant's Immigration History

13 Records revealed that Defendant had been previously removed or deported from the United States
14 to Mexico on October 16, 1997; July 21, 2000; December 12, 2000; May 14, 2002; February 20, 2003;
15 November 18, 2003; and July 9, 2004.

16    3.    Defendant's Criminal History

17 A search of records fro Martinez revealed that he was convicted, on May 2, 2002, in the Southern
18 District of California, of being a deported alien found in the U.S., in violation of 8 U.S.C. §1326, and,
19 on March 9, 2004, in the same U.S. District Court, of making a False Statement to a Federal Officer, in
20 violation of 18 U.S.C. §1001.

21    4.    Defendant Advised of his Miranda Rights and Invoked

22 At approximately 4:10 a.m., on January 15, 2008, BPA Edgar Gallegos advised Martinez, in the
23 Spanish language, of his right to contact the Mexican Consulate, which he declined. At approximately
24 4:12 a.m., advised Martinez that because he was going to be arrested on criminal charges, his
25 administrative rights no longer applied. As witnessed by BPA Espinoza, Agent Gallegos advised
26 Martinez of his Miranda rights. Martinez indicated that he understood his rights and was not willing to

27
28 $^{1/}$(...continued)
   indicators of disturbance, such as footprints, broken branches, etc.

1 answer any further questions without a lawyer present. All questioning of Martinez stopped at that point.

**III**

**ARGUMENT**

**A.  Motion for Discovery**

The Government has and will continue to fully comply with its discovery obligations. To date, Defendant has been provided with 83 pages of discovery and a copy of the DVD on which his waiver of rights and subsequent invocation of those rights are contained. The Government has the A-File in this case and the tape recording of this deportation/removal hearing before an Immigration Judge in 1997 have been ordered. Once those are received by Government counsel, Defendant's counsel will be notified and, after obtaining a court order to do so, may make arrangements to review that A-File. A copy of the deport tape will also be provided to Defendant. The following is the Government's response to defendant's various discovery requests.

1.  Statements of Defendant Have Been Provided

The Government will fully comply with Federal Rule of Criminal Procedure 16(a)(1)(A) by providing defendant with his statements, including any tape or digital recordings made of defendant. The Defendant made no post-Miranda statement. The Government will not, however, disclose all oral statements made by the defendant to those individuals not known to be Government Agents. See United States V. Hoffman, 794 F2d. 1429, 1431 (9th Cir. 1986) (Defendant's statements need only be disclosed if made to known Government Agent). However, those oral statements which the defendant made to unknown agents will be timely disclosed prior to trial should the Government decide to use them in its case-in-chief.

2.  Arrest Reports, Notes and Dispatch Tapes

The Government has provided the defendant with arrest reports. The substance of relevant oral statements of the defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

//

//

A defendant is not entitled to rough notes because they are not "statements" within the meaning

of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

Dispatch tapes, if they exist, will also be provided to defendant.

### 3. Brady Material

The Government will comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963).

### 4. Defendant's Prior Record

As noted above, Defendant has a prior criminal record. He has been supplied with all references to those conviction and subsequent arrests in reports in possession of the Government.

### 5. 404(b) Evidence - Notice of intend to Introduce

The Government has complied with Rule 16(a)(1)(B) in providing defendant with his known prior record as set forth in his "rap sheets" and prior deportations and/or removals. At this time, the Government may attempt to introduce evidence of his previous illegal re-entries following removals/deportations and occasions that he was found back in the U.S. following those removals/deportations, as 404(b) evidence.

### 6. Evidence Seized

The Government has, and will continue to comply with Federal Rule of Criminal Procedure 16(a)(1)(C) in allowing the defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the Government, and which is material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant, including photographs.

The Government, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

//
//
//

7. <u>Preservation of Evidence</u>

The Government will preserve whatever evidence was gathered in this case.

8. <u>Tangible Evidence</u>

See Paragraph 6 above.

9. <u>Evidence of Bias or Motive to Lie</u>

The Government will comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972). The Government knows of no bias, prejudice or other motivation to testify falsely or impairments of its witnesses, but will make appropriate disclosures if such information should become known. <u>See</u> <u>Napue v. Illinois</u>, 360 U.S. 264 (1959); <u>Mooney v. Holohan</u>, 294 U.S. 103 (1935).

The Government will provide defendant with any agreements made with witnesses it expects to call at trial.

10. <u>Impeachment Evidence</u>

As noted above, the Government will comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

However, under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the Government must only disclose <u>exculpatory</u> evidence <u>within its possession</u> that is <u>material</u> to the issue of guilt or punishment. <u>See also</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774 (9th Cir. 1980).

Under <u>Brady</u>, the suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to guilt or innocence. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); Favorable evidence includes impeachment evidence. <u>United States v. Bagley</u>, 473 U.S. 667 (1985).

Defendants are not entitled to <u>all</u> evidence known or reasonable known which is or may be favorable to the accused or which pertains to the credibility of the Government's case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980):

> [I]n response to a request for exculpatory evidence the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

Id. at 774-775.

Defendant requests the Government provide the criminal record of witnesses the Government intends to call and any information relating to a criminal investigation of a witness. Although the Government will provide conviction records, if any, which could be used to impeach a witness, the Government is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977). When disclosing such information, disclosure need only extend to witnesses the Government intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

The Government will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify. If Defendant testifies at trial, the Government will seek to impeach him with his prior criminal convictions. Defendants are not entitled, however, to any and all evidence that a prospective witness is under investigation by federal, state or local authorities for misconduct.

          11.    Witness Addresses

The Ninth Circuit has consistently held that the Government, in a non-capital case, is not required to produce a list of witnesses in advance of trial. United States v. Dischner, 974 F.2d 1502 (9th Cir. 1992), *citing* United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985). *See also* Weatherford v. Bursey, 429 U.S. 545 (1977) (Brady does not require that the prosecution reveal before trial the names of all witnesses who will testify unfavorably).

In United States v. Jones, 612 F.2d 453 (9th Cir. 1979), cert. denied, 455 U.S. 966 (1980), the Ninth Circuit stated:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. Section 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Although the law does not require the Government to disclose witnesses in this type of case, the Government will provide the defendant with a list of witnesses prior to trial.

12.   Name of Witnesses Favorable to Defendant

The Government will provide defendants the name of any such witnesses should they become known to the government. The Government will not, however, provide defendant with any reports taken from individuals interviewed at the time defendant was arrested unless those reports fall within the dictates of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or 18 U.S.C. § 3500. Should the Government become aware of any exculpatory information contained within any of these documents **as they pertain to the defendant**, they will be provided.

13.   Statements Relevant to Defense

The Government will provide defendant with any such statement should it become known to the Government.

14.   Jencks Act Material

The Government will comply with its obligations pursuant to the Jencks Act.

15.   Giglio Information

The Government will comply with its obligations pursuant to Giglio v. United States, 405 U.S. 150 (1972).

16.   Expert Witnesses

Pursuant to Rule 16(E), the Government will timely disclose all expert witnesses it expects to call at trial along with their curriculum vitae. As of this time, the Government expects to call an employee of CBP to identify the and explain the basis for a Certificate of Non-Existence, as well as an expert in fingerprint comparisons to testify about the prints of Defendant as compared to fingerprints taken of Defendant at the time of each deportation or exclusion. This fingerprint expert may also be called to compare Defendant's fingerprints with those he provided at the time e was convicted and sentenced for crimes in the past.

**B.   The Indictment Properly Alleges All Necessary Elements of the Charged Offense**

Relying on the Ninth Circuit's recent decision in United States v. Salazar-Lopez, 506 F.3d 748, 749-750 (9th Cir. Oct. 24, 2007), Defendant argues that the indictment must be dismissed because "the indictment fails to allege that [Defendant] had been on a specific, post conviction date." [Def.'s Mot. 4.] Not only is Defendant mistaken, but Salazar-Lopez approves of the language that is found in the

indictment against this Defendant. Specifically, the Ninth Circuit stated that "the date of the removal, <u>or at least the fact that [Defendant] had been removed *after* his conviction, should have been alleged in the indictment and proved to the jury</u>." Salazar-Lopez, 506 F.3d at 752 (emphasis added). The indictment addressed by the Ninth Circuit in Salazar-Lopez did not have the requisite language, and therefore the Court performed a harmless error analysis. Id. at 752-754. Here, however, the indictment expressly states: "It is further alleged that defendant, JUAN MARTINEZ-PERALTA, was removed from the United States subsequent to March 9, 2004." Because this kind of language is required by the Ninth Circuit, Defendant's motion must be denied.

Defendant also claims that the indictment fails to allege the proper elements of the crime charged. (Def.'s Mot. 4.) This argument fails for two reasons. First, Defendant does not discuss the applicable elements in this case, those necessary to prove an attempted re-entry after deportation. Second, the indictment does, in fact, allege the necessary elements to support such a charge. The Ninth Circuit Model Jury Instructions state the following elements must be proved in an attempted entry after deportation case:

(1) The defendant was deported from the United States;

(2) The defendant had the conscious desire to reenter the United States without consent;

(3) The defendant committed an overt act that was a substantial step towards reentering the United States without consent;

(4) The defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and

(5) The defendant was an alien at the time of the defendant's attempted reentry into the United States.

Committee on Model Jury Instructions – Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit, § 9.5A (West ed. 2003); United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc). The indictment in this case alleges:

> On or about January 14, 2008, within the Southern District of California, defendant JUAN MARTINEZ-PERALTA, an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the express consent of the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, [Title 6 citation omitted], having expressly consented to the defendant's reapplication for admission to the United States;

9

08CR0247-H

in violation of Title 8, United States Code, Sections 1326(a) and (b).

It is further alleged that defendant JUAN MARTINEZ-PERALTA, was removed from the United States subsequent to March 9, 2004.

As evidenced above, the indictment alleges the necessary elements for the crime charged, attempted entry after deportation.

**C.    Defendant's Pre-arrest and Processing Statements Are Admissible**

Defendant moves to suppress any statements he made to a U.S. Border Patrol agent when he was initially apprehended in the hills, hiding behind some brush with ten (10) other individuals. Defendant made statements to the Border Patrol agent, upon being found in the United States, that he was a citizen and national of Mexico and had no papers allowing him to legally enter the United States. Because those statements did not occur in response to custodial interrogation, Miranda warnings were not required and no inquiry need be conducted into the voluntariness of those statements. Defendant's motion to suppress should be denied as to these statements.

Defendant also provided certain biographical information while he was being processed and booked into custody. This included his full name, date of birth, current address, telephone number, employer, and names of family members. The Ninth Circuit has held that the routine gathering of biographical data does not constitute interrogation sufficient to trigger constitutional protections. See United States v. Perez, 776 F.2d 797, 799 (9th Cir.1985); United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir.1983); United States v. Booth, 669 F.2d 1231, 1238-39 (9th Cir. 1981) (questions regarding the defendant's name, age, and residence).

Defendant's motion to suppress these statements should be denied.

**D.    Defendant's Motion for Leave to File Further Motions for Leave to File Further Motions Should Be Conditionally Denied**

The Government opposes the Court's granting leave to the defendant to file further motions absent any newly discovered evidence revealed by future discovery or a change in substantive law which would justify the filing of such a motion.

//
//
//

08CR0247-H
10

## VI

## **GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

To date, as noted above, the United States has provided Defendant with 83 pages of discovery and a DVD. The United States will continue to comply with all of its discovery obligations as additional reports and/or other discoverable material becomes available.

The Government moves the Court to order Defendants to provide all reciprocal discovery to which the United States is entitled under Rules 16(b) and 26.2. Rule 16(b)(2) requires Defendants to disclose to the United States all exhibits and documents which Defendants "intend to introduce as evidence in chief at the trial" and a written summary of the names, anticipated testimony, and bases for opinions of experts the defendants intend to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

## V
## **CONCLUSION**

The Defendant's motions should be granted and denied as noted in the above discussion and the Government's motion for reciprocal discovery should be granted.

DATED: March 10, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/David L. Katz

DAVID L. KATZ
Assistant U.S. Attorney

08CR0247-H

|     |     |     |
| --- | --- | --- |
| 1 | UNITED STATES OF AMERICA | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0247-H |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| JUAN MARTINEZ-PERALTA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, David K. Katz, am a Citizen of the United States over the age of eighteen years and a resident of San Diego county, California. My business address is 880 Front Street, San Diego, California 92101-8893. I am not a party to the above-entitled action. I have caused service of the Government's Response and Opposition to Defendant's Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies them.

1.Victor N. Pippins, Federal Defenders of San Diego; victor_pippins@fd.org

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-EFC participants on this case n/a the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2008.

s/David L. Katz
DAVID L. KATZ

08CR0247-H